Thank you and good morning, Your Honor. Alan Hyman on behalf of Mr. Horaney and to a limited extent, on behalf of myself as well. This matter, as I often say, we've written quite a bit here, 14,000 words here, and I think I've tried to argue the points pretty straightforwardly. There are a few things I might add. In going back over the record and going back over some of the items that is in the record, I recall to the extent Mr. Horaney's deposition was at issue and was a basis. There are statements in there that he doesn't recall money open to any account. There's even a statement in there that he was asked by counsel, have the Bellagio markers, do you remember how much you owed? I don't remember. Is it your belief you paid them off? Yes, it's my belief I paid them off. He doesn't know the last time that he gambled there. He doesn't know what a discount agreement is. But that is a bit beside the point. Counsel, can I turn to the jurisdictional question? Yes. Is there a do we have any kind of evidence of a judgment issued by the district court other than the order signing the summary judgment? There is a judgment. Everything that was ever done was presented to the court. The judgment, there is the order, there is summary judgment, and then there is a tab 3, which is a judgment in civil case. Right. So we have an order, we have a judgment, you appeal. Now you claim on appeal, look, the district court didn't deal with all my claims and, therefore, we don't have jurisdiction over your appeal. Right? Is that your position in a nutshell? Yes. That's what I came to realize when I started to analyze the record. But if you have a judgment in a civil case, isn't that so? It doesn't appear that the district court thought that he had resolved all of the issues. Pardon? Pardon you, Your Honor? If you have a judgment, isn't that the evidence that the district court thought that he had issued a final order disposing of all issues in the case? If we had a judgment, there was a judgment on the attorney's fees and there was an order. I'm sorry. I'm sorry. You have the district court's order on the summary judgment, which you're now contending is only a partial summary judgment. That's what I came to the conclusion upon review of the record. Yes. And I asked you if there was separate evidence of a judgment, whether it was a separate order issuing judgment. You told me, yes, it's a tab 3. Now, if you've got a judgment in the case, isn't that evidence that the district court believed that he had resolved all issues in the case and this was a final order that was then appealable? You obviously thought so because you took an appeal. Right. I thought so initially. You changed your mind. You're going to tell us that we don't have jurisdiction because the district court hasn't disposed of your State claims. But it appears that, at least in the district court's mind, that he had resolved all claims in the case, and, therefore, the appeal, the case could be appealed. I find it difficult for me to what was in the district court's mind. I think that was the principal issue. I think that was the principle issue. But he issued a judgment. He issued a judgment, yes. Isn't that evidence that this was a final judgment? He ---- It's not a partial judgment. It's a judgment. The ---- there's an ---- he issued a judgment.  I mean, there's no ---- Well, it's called an order. I mean, I don't want to ---- I don't think there's any doubt, counsel, that the district court ---- I don't think there's any doubt that the district court thought it was resolving all the claims. I think the difficulty in the issue on appeal is whether or not under our Chacon case, whether his ---- the district court's failure to resolve one of the claims means that under 54B, we've got to send it back. Yes. I mean, this is not unusual with this case. It has happened in other circumstances when we get into it. Right. And so when you realize this, why didn't you make a motion as opposed to let us go through all the briefing? Pardon? Why didn't you make a motion to remand when you discovered this? Because you discovered it in your own mind before you filed your first brief. Or bring a motion to dismiss the appeal. Or I found it in the brief. You've got the power. You're the appellate. You can dismiss the appeal. Yes. But then one is concerned, and one has concerns about this. The other side says ---- then the other side comes back and says, no, the judge made a final decision on all claims and so forth and so on. So I'm taking a bit of a risk. Well, sure. But I mean, if we grant the motion, you get the answer. If we deny the motion, you get the answer. You're protected either way with the district court because if we grant the motion dismissed based on the failure of the district court or perceived failure of the district court to resolve all the claims, then send it back. The district court will issue a final judgment and back up your appeal. But here, because you filed a brief, said we don't have jurisdiction over the appeal you brought, and now we're months down the road, everybody's briefed it. I said I had concerns about whether or not, but I felt ---- you know, it's incumbent upon me. And this has happened before in other matters where the matters have gone up and it's been unclear. Yeah. And they think it's clear. I felt it was unclear. And I could have gone ahead and ---- that's right. In hindsight, I could have gone ahead and filed that motion. You do have jurisdiction. We do have jurisdiction over the attorneys' fees. That's a non-party issue. And we have jurisdiction over that. Precisely so. It questions whether we have jurisdiction over anything else. That's precisely the fact. And then I felt as long as there was jurisdiction over the attorneys' fees matter, I felt we're up here anyway, then is there jurisdiction. Will the Court undertake appellate jurisdiction and consider these matters or not? I don't know. Why don't you argue the attorneys' fees? We know we have to decide that. So why don't you start with that? Okay. Well, the matter I would say there is I briefed that rather fully. And, Judge Wallace, I mean, I'll just refer to a couple of your cases of ---- Couldn't find better cases. Beverly Hills Bank Corp. v. Hine, 752 F. 2nd, 1334, 1984, where someone brought an appeal of a petition for leave to amend. This Court denied that appeal to amend. And after it was remanded back down there, the trustee in bankruptcy went ahead and sought leave to amend. Directly contrary to the mandate. And when the Court denied it, took an appeal back up here, and they asked for attorneys' fees for bad faith and vexatious litigation. And Your Honor said it was a close call, but it was denied. In another case, Western Radio Services Corporation v. Security, a Secretary of State Secretary of Agriculture, 79 F. 3rd, 896, Forest Service issued a permit. In fact, that first one had to do with a motion for leave to amend. The Forest Service issued a permit. Another party that did not only claim economic injury, not environmental injury, did not have standing. The district court found it did not have standing. This Court affirmed it did not have standing and denied 1927 sanctions. Again, in this particular circumstance, I've argued it fairly thoroughly in the briefs. The Court just blanketly went ahead and said, well, we're going to assess you 80 percent of the fees, but has not identified one thing, one act that was done that was vexatious and bad faith. You walked out of a deposition, right? Pardon? You walked out of a deposition. You took your client out of his deposition. Yes, I certainly did. You didn't get leave of court. You walked out. I certainly did. When he was asked matters which would have imposed possible criminal matters against him, when he was, I felt, totally disoriented and totally unable to respond and should not have been there. I felt that. And I didn't assess it. You could have asserted the Fifth Amendment, could have taken a lot of remedies, but you did walk out of the deposition. That's true. But is that vexatious? And is that in bad faith? Your client failed to show on a couple of other occasions. He failed to show. He was in the hospital. You didn't tell opposing counsel, just let them show? I told him he was in the hospital. And I told him, and I wrote them letters and said that. And that was the matter stated, that he was in the hospital and wasn't able to appear. And he wasn't able to come up there. I can't force him physically to come up there, and so I so stated that. And then we arranged a time when he did appear. He was ordered to appear within 30 days. He couldn't do that. He was again in the hospital. And then we arranged a time for him to appear. And he did appear. So, yes, we walked out of the deposition, yes. I felt the man was totally disoriented. I felt he was ---- And then you filed a motion for a protective order? I did not file a motion for a protective order. No, I did not. You know, you just can't unilaterally do that. You can't walk out of a ---- I mean, I can understand reasons for terminating a deposition. But if you're going to do that, you've got to immediately file for a protective order and put your reasons on the record, right? You know this. That's true. And in this particular case, the difficulty was getting the reports from doctors. I have verbal reports from doctors. I'm trying to get written reports from doctors. He then gets admitted back to UCLA Psychiatric Ward. I'm trying to get a report. I'm just trying to get reports from doctors. So I don't come into court and just say, listen, in my opinion, this person is incompetent. In my opinion, he's not able to understand what's being asked or answered. In my opinion, this. In my opinion, that. That is not sufficient. I have to get reports from doctors who will be able to back up what is being done or his state of mind. The district court also found that you failed to offer this new defense until two years after you began the litigation, until after the plaintiffs had moved for summary judgment. The district court was a bit, when you say the complaint was filed in January of 2005, and we mentioned the defense in the deposition that he was under the, I mentioned and gave notice of the defense that I had been notified by psychiatrists in August that this man had serious dementia, had suffered brain damage in 1999. Part of his brain was missing. I was told all this, and I was attempting very hard to get any reports that would support it. You didn't amend your complaint to add it. I didn't want to amend a complaint to add it until I had those reports. I just can't go ahead and willy-nilly just amend a complaint. Well, perhaps so, but I mean, we're not, we can't consider the extrajudicial reasons now. We've got to look at what the district court did. And you say the district court erred in what it did. And all the district court had to look at was the record of what you filed. Aren't we confined to that? Maybe perfectly good explanations. I put that in front of the district court. Those are my declarations in front of the district court. And those are in the record. And those were all set forth in the record that I was notified. I put in the record that I notified a posting counselor in August that I had been notified by a psychiatrist. I put in the record that he was admitted to these hospitals, that I was waiting for a psychiatric report, that I didn't feel I was competent to go ahead and do that without getting actual reports from doctors. All that was put in the record, and all that was before the court. The thing with these types of sanctions is when you ask what particularly did I do that was vexatious and bad faith, once the case was transferred to Las Vegas, an unopposed motion to consolidate, a deposition, a motion for summary judgment. That's all that occurred.  Nothing else. I didn't bring any other motion other than for leave to amend, but only after I had the reports from the doctors. The district court also finds that you didn't do anything for a couple of years. What do you mean, say didn't do anything for a couple of years? Well, that's not vexatious litigation, if not doing anything for a couple of years, Your Honor. I suggest, Your Honor, when one doesn't – in every vexatious litigation matter, they say, this attorney went ahead and made this motion, and that motion was improper. In the one case in which – No. We've also had a bunch of – there are cases in which if a defendant doesn't show for a deposition, the schedule, the other parties show up, the defendant walks out of a deposition, he's sustained fees on that basis. And that can be fees on that basis. Sure. But that's fees on that basis, not fees for filing the complaint back in 2005, not fees for resisting a motion to transfer, not fees for anything that took place in front of another court that the other court found was proper, not fees for bringing a motion to amend, not fees for the totality of the case under 1927, which all say must be very identified. And, in fact, in – again, if it's – if it's in the one case where the two cases Judge Wallace did not find fees were appropriate under – we're talking – someone could have brought a Rule 11 motion. I think we're talking 1927. 1927, as I understand it, you don't go ahead and just award for the whole case or a percentage of a whole case. You have to say this attorney did this one thing wrong. He did that one thing wrong. What was the additional cost? That's your jurisprudence. That's the jurisprudence of the circuit, of all the circuits. Judge George doesn't necessarily have to say this is bad faith as to each one of the complaints that he's made, but he does specifically say the complaint for declaratory relief was meritless, the defenses to the action were meritless, the opposition to Bellagio's motion for summary judgment was meritless, and that your actions throughout the matter have been for the sole purpose of delay the inevitable judgment against your client. Now, that was the basis upon which he assessed the fees. Is it your – is it your understanding that those findings are incorrect? Yes. I don't think that someone would have to say, because on 1927, the filing – and it's not just technical. The filing of a complaint is not a basis for 1927. Every authority has filed – found that. So to say that the basis for declaratory relief was meritless is not a basis for 1927. But you tie that in with his other findings, that he said that throughout the matter there's been delay of the inevitable judgment. If that's true, then an attorney is using the Federal courts for an improper purpose, that is, not to defend, but to delay the inevitable and the costs, et cetera. Well, if you question me – The question is, are those findings sufficient, then, for the assessment of fees? I don't think the first one is at all. That occurred before the California court. It was filed there. There was an OSC for dismissal. There was an amended complaint. The court transferred it. And actually, these two volumes occurred before the California district court judge, which would have been the one who would have assessed whether or not any of that was improper or not. Well, I understand your argument there, but that case was moved, transferred to Las Vegas for all purposes. Right. And so the trial judge in the district in California no longer has jurisdiction. The jurisdiction is with Judge George. Right. I understand that. Yeah. So to say, but there's no specific – I mean, there's no – you say the finding was without – of the first amended complaint was meritless. That doesn't – well, I – first of all, I disagree with that. Yeah. I understand. I disagree because the judge misinterpreted it. The judge said, I am bringing the first amended complaint on the basis that that gambling addiction is a defense. That was never stated in the first amended complaint. Well, but he concluded his finding was it was meritless, but he ties it in at the end, saying that all of this was for the purpose of delay. That's, I think, the finding that you have to focus on, whether or not that finding is clearly erroneous. Yeah. But you say if you take the doctor's reports, and maybe in hindsight I could have realized it more, but if you take the two doctor's reports, the two medical doctors, and they both say this man had brain damage in 1999, he had other additional strokes during this entire period of time, he – there are serious questions of whether he understood what he was doing financially. There are serious questions of whether he understood what he was doing at all. How is that meritless by the motion I sought for leave to amend based on those doctor's reports? How is that possibly meritless based upon two professional, you know, psychiatrists and testing psychologists which say these things and have reviewed it? How does that become meritless? And other than that, and in fact that is a reasonable ground to defend against the action. Counsel, you've gone over your time, so I'll give you a couple of minutes for rebuttal, but thank you for your argument. Good morning. May it please the Court. Todd Bice on behalf of the appellees. I'd like to, subject to the Court's questions and other inquiries, I'd like to address three points with the Court today. The first is this Court's jurisdiction to consider the appeal. The second is the summary judgment ruling that was entered against Mr. Harani, and finally the Section 1927 sanctions. With respect to the jurisdictional question, obviously we find ourselves in an odd situation in that we didn't file the appeal, but we're being asked to defend this Court's jurisdiction. But this Court does have jurisdiction over this appeal. The issue is — Now, you understand, we understand we have jurisdiction over the fees. But you're saying we have jurisdiction over the merits? I am, Judge Wallace. And let me explain why our position is that. You look at the question, isn't the form of the Court's order, it is the substance of the Court's order. And what the substance of the district court's disposition was, the entire case — and look at the chronology of the case, and you can understand exactly what happened here. May I stop you right there, because I think I know where you're headed. And I think I started at the same spot that Judge Bybee may have. We haven't talked about the case, obviously. Was there a final judgment? Because a lot of times we get these 54 appeals, and there's no final judgment. That's easy. That's an interlocutory improper appeal. But then if you get into the Chacon case — and I want to lay this out for you so you can respond to it. The Chacon case dealt with this issue. And it says, although his claim was of record before the Court, it was not considered in the ruling. We therefore conclude that the second claim for relief remains a live cause still pending and that the order actually constituted a granted partial summary judgment. So far, so good. Then you look up further, and it details that there was a judgment filed by the district  So in Chacon, what happened was you have, as in this case, an order that doesn't dispose of all the issues. A judgment, final judgment issued on everything, and an appeal, and we said that's a non-final order. So that's my concern. Yes. Because it wasn't an ultimate disposition of the entirety of the case. But if you look at — again, let me start with the — you have to look at the substance of this case. The original complaint that they filed in the Central District was simply a claim for debt relief that he didn't owe the money because he had a gambling addiction. The district judge there, sui sponte, issued an order to show cause, saying, this looks like a preemptive lawsuit. You need to show cause why it shouldn't be dismissed. In response to that, two claims were then added to the complaint, the claim for conversion and the claim for fair debt collection practices under California State law. Those were simply set up as claims to avoid the underlying obligation. When the case was transferred — Is there evidence? Is there — you make this allegation. Where's the proof that that's what they were for? That isn't in any of the findings of Judge George. The proof is, is that when the case was transferred, and then he was ordered to answer the Nevada action, guess what the affirmative defenses were? The same two That's in 607 directly. That may be so, but we have in this case an action in the Central District. That action is brought over to Nevada, and then you have a separate action in Nevada. Yes. The judge takes care of one. The other is left dangling. The case — How can that be final? The cases were consolidated for all purposes. Correct.  And what we're saying is, and this is — we cited to you, and I understand the cases we cited were from the First and the Sixth Circuit on this point, that say — and the point is, is that if the ruling precludes alternative claims, then it is final. The simple fact that the Court didn't put in its order that this also adjudicated those claims, which, by necessity, it did, because the whole point was these were affirmative defenses. No, I understand that. But our case in Chaconne, it seems to me the identical circumstance occurred. We had a case that involved more than one claim. District court order adjudicates one claim but not the other. Final judgment issued. Yes. And then we said that's nonfinal. So how do you get around that? Because in this particular case, the adjudication of the claim that was asserted by necessity bars those other claims. It adjudicates those other claims. What is — But it did in Chaconne, too. The issuance of the order, the judgment, terminated the case. No. I don't think, though, that I don't think in Chaconne the point wasn't the Court did not say that it was simply remanding it back so that the district court could sign an order saying that it did adjudicate the claim. That was different. The claim there, the secondary claim that survived, that remained, had not been, by necessity, by the ruling in the first claim, didn't adjudicate it. Here, this necessarily adjudicated it. Well, why does it necessarily adjudicate it? Because — I mean, there's no finding on conversion. There's no finding on the Unfor Debt Practices Act, which is a separate claim which may entitle them to damages but not preclude your entry of judgment. Well, again, Your Honor, he set these up as affirmative defenses to our claim by necessity, and then he presented no evidence on them in opposition to our motion for summary judgment. I mean, let's look at the practical reality. I know the practical. But bear with me for a second. Sure. Let's take — let's assume for the sake of argument that we do have appellate jurisdiction. On what basis can we sustain his rejection of those two claims on the record? There are no findings. There are no conclusions by the district court. We have two stray claims out there that are independent of your claims. There was absolutely — we filed a motion for summary judgment. There was absolutely — these are claims by his own account that they would have to submit evidence on to substantiate in the record. He asserted these again, as we said, as affirmative defenses. Let me just give you the example, obviously. People can assert 25 different affirmative defenses. The district court doesn't, in its order, granting summary judgment. If the party doesn't argue that defense or introduce any evidence on it, you can't fault the district court for not reciting that I'm clicking off all these different affirmative defenses that are asserted but never argued in the opposition. And that's not the rule on 54B. It's a claim, not a defense. He's got a separate claim. He brought a separate claim, but he also brought these same claims as affirmative defenses in this case. And there was absolutely no evidence presented on them. I understand your frustration, but it's very hard for me to get to these. I mean, it seems to me one way or the other. Under Chacon, we've got to send it back. Or, two, we've got to say, district court, you didn't deal with these. We reverse and deal with them on the merits. But the – but if you do – if you were to remand it and send it back, all that's going to happen is the form of the order will be entered against them because the claims were, by necessity, adjudicated. Yes. But that's exactly what we did in WMX v. Miller, for example, which is a case where the district court granted leave to amend and said if you don't file leave to amend within 20 days, the case is over. They appeal. We say en banc, no, you have to get a final judgment. And everybody made the same argument we're making here today. Look, all that's going to happen is they're going to – they all wanted the case over. The district court said the case is over. The party said the case is over. Everybody agreed. We still send it back. So you've got to enter it. Right. Because in that case, there hadn't been a final judgment entered. But in this case, there is a final judgment. But in Chacon, there was a final judgment entered. I'm sorry? But in Chacon, there was a final judgment. Yes. In Chacon, there was a final judgment entered. And as I pointed out, that final judgment – that final judgment didn't address one of the claims, but it wasn't the assertion. There was no one was claiming there that I can recall from the case. It's only three pages long, where they were saying, but the adjudication of the first claim, by necessity, had barred – would have addressed the merits of the second claim. And that's the case we cite out. I think it was the Ford Motor Company case from the Sixth Circuit. It pointed out that you have to look at the substance. Did the – was the effect of the district court's ruling to have adjudicated the underlying merits of that claim? And again, here, he presented absolutely no evidence on it. In response, he has set that up as an affirmative defense to our claim. In your motion for summary judgment – Yes. Did you specifically address the complaints of – that was made in the case that came over from California? No. We did not set up his claims and, in other words, set them up and then defeat  No. So what you're saying is that because a similar or the same issue is in a separate defense in the motion – in the claim for which you did file a summary judgment, that we, therefore, should dismiss the case that was never involved. Now, the – what I'm saying is the adjudication of the claim that we moved for summary judgment and obtained summary judgment on, by its very nature, precludes these other claims because the – Why? Because the question that he presented is, in all of these cases, in the first case that he filed in California, the question is – and this is what the judge in the Central District observed as well is – the question presented is, was he indebted to the casinos, and did he owe them the money that they were seeking to recover from him? All right? He's filed that first claim. Once the order to show cause was entered, he then brought these additional claims, trying to retain jurisdiction in California. But again, the point is, we established that he owed the money, that he was indebted to us, and that we were entitled to recover it. You thus can't – we can't be guilty of conversion if we sustain that claim. I understand that. But the problem is that in a summary judgment, the person – the party against whom you're bringing the summary judgment has an opportunity then to assert such evidence as they think shows that there's a material fact in dispute. There was never any – any notice given to him that his other complaint was under attack. There's no specific notice to him. So why – why wouldn't we just say that that was not involved and send it back for a determination and let counsel provide such evidence as he may have to prevent summary judgment? Because counsel had the opportunity, especially since he had asserted those exact same issues as affirmative defenses and had the obligation to present that, if he wanted to oppose our motion for summary judgment, he knew what his defenses were. In the other claim. In the other claim. But it doesn't matter. It's the exact same claim. It does matter, I think, counsel. And let me explain why. Maybe you can tell me where I'm wrong. A claim under the Fair Debt Collection Practices Act may not be a defense to the debt, but it may give rise to other damages. So by finding for you a holding in your favor on the debt, it doesn't necessarily preclude that cause of action, does it? I believe in this case it does, since he was asserting it in an attempt to avoid our collection. Well, let me get my devil's advocate with you for a minute and tell me how you think I'm wrong in my thinking. I mean, you can assert a whole bunch of bogus affirmative defenses that have nothing, that are not defenses to the claim, but in fact may be independent causes of action. So why couldn't Judge George have said, well, sure, I'm going to give you summary judgment. The Fair Debt Collection Practices Act isn't a defense to this. Conversion isn't a defense to this. I'm going to give you summary judgment. On the other hand, couldn't Judge George have then said, but I do find a violation of the Fair Debt Collections Practices, so I'm going to order a judgment against you for X number of dollars. And that would not be inconsistent, would that? Not that. Well, let me answer it this way. I could envision a dozen different claims that parties can assert that wouldn't in a particular hypothetical be inconsistent with the end result, but not in this case. Because in this case the Fair Debt Collection Practices Act. Okay. Again, I come back to the point. Why did why was it asserted? And look at the allegations of it. It was asserted against us as a defense to the setting up a defense to our claim to recover. Right. So that's why he asserted it as an affirmative defense, in addition to asserting it as an affirmative complaint. But what's your best case that says if a court gives summary judgment in favor of you on this, it cannot grant judgment affirmatively? In other words, if you discard the affirmative defense that's raised, you can't give a summary relief in the other direction. We believe that, again, the Ford Motor Company case from the Sixth Circuit and the Bennett v. Trio Industry case from the First Circuit are the cases most directly that deal with this point that establish the Court looks at the substance. Would it, in light of the claim that was asserted, did the adjudication of the first claim effectively adjudicate the claims that now the party is arguing weren't adjudicated? Because if it does, the Court concerns itself with substance not formed. The fact that the district judge didn't say, oh, and by the way, this necessarily precludes these two remaining claims, doesn't matter. The Court, again, the Court concerns itself with the substance of that ruling and the substance of it here asserted on the record in this case. And I understand, Judge Thomas, what you're saying. You could envision all sorts of other claims where they might say, well, regardless of the debt, I have these unrelated claims that don't arise from the debt, aren't a defense to the debt that I'm asserting. But that's not what he did here. And that, by the way, is exactly why his own counsel never argued it any other way. Well, that's not. But I mean, I have difficulty seeing how a fair debt collections practice claim can be a defense to a debt in this particular circumstance. I mean, I might agree with the district court. It's not a defense. On the other hand, it might be an independent, affirmative cause of action. Well, I mean, I respectfully disagree with you on that. I can see exactly how it would be asserted as a defense and exactly how it was asserted here. And that is, you were engaged in a course of conduct that violates the statute, and thus you're not allowed to recover on the debt. And that's exactly what he argued here. So to say that the district court judge didn't see this as a viable, affirmative defense, it was never argued to the district court judge. No, I mean, I don't think the district court judge. It was on the district court judge's radar at all from either party. Nobody brought it to his attention. Correct. I can understand that. But then our question is, because it wasn't adjudicated, how can we sustain the nonadjudication of a claim that's there? And I understand your argument completely if it's subsumed. Our question is, is it subsumed, and does Chacon allow it? In this particular case, Judge Thomas, I submit to you it was subsumed because of the way in which it was presented. I agree with you that there, hypothetically, there are types of cases, such as Chacon says, types of cases where the claims are not intertwined with each other, where an adjudication of one does not necessarily result in an adjudication of the second. But in this particular case, again, you have to look at what the record is here and how was the claim asserted and what was it set up as. It was set up as a defense to our collection, and that's why it was asserted as an affirmative defense. That's why when it was asserted in front of the central district, it was only asserted once the central district said, I'm going to order to show cause why this claim shouldn't be dismissed. So the only thing that one can fault us and, I guess, fault the district court for is saying, is not adding the magic words in the documents that says, and this obviously adjudicates these remaining claims as well, just like conversion. And I would point out, counsel never argued any of this. Robertson. When we pointed, when we moved for attorneys' fees, that would have, if he wanted to take the position that this did not adjudicate his remaining claims, he knew it adjudicated his remaining claim. Otherwise, he would have opposed our imposition of attorneys' fees at that point in time, saying the case isn't over, what are you talking about, we've got these remaining claims left. He considered it to be final. He intended that that was an adjudication on the merits, just like we did. That doesn't get us very far, because under our law, you can't stipulate jurisdictions. So there can't be a waiver there that gives you jurisdiction here. Judge Walsh, you're right on that, except I think this ties into my point to Judge Thomas, which is, look at the claim and how it was asserted in this case. Well, let's take a look at the case. He intended it as a defense, which is why he did not raise it after the fact when the Court adjudicated our claims. Right. But you see in Chacon, we have negligent and negligent entrustment. It looks to me in Chacon that the resolution of the negligence issue probably subsumed the negligent entrustment issue because of the way the Court handled that issue. It said you're not in the course and scope of the employment. Now, negligent entrustment arguably, under your theory, ought to have gone with it. You could say, well, of course, if you're deciding on course and scope, that necessarily takes care of the negligent entrustment case. But we sent it back anyway. I mean, that's our problem. I'm not arguing with you on this. I'm just saying we're really trying to work through these issues as well, and we're bound by our precedent. We've got to look through it very carefully. I think we understand your point. All right. Thank you, Judge Thomas. I'm out of — and members of the Court, I'm out of time. If you have any further questions of me, or if you'd like me to address any of the points, I'm more than happy to do so. Counsel, I'm sure that you are familiar with our rules. In Rule 28, our local Rule 28 here, we require that a separate section be put in each brief on jurisdiction because jurisdiction is so important. We want to get it out of the way first to see if we have any power. I didn't find a jurisdiction section in your brief, and it seems to me that, as you can tell from our questions, jurisdiction was very fundamental to us, and we had to sort that out on our own. I think maybe it might be well for this jurisdiction issue to be ventilated a little earlier because had you made the full argument at that time, there was more of a motions calendar, and we would have dismissed for lack of jurisdiction, or we would have denied it or whatever. At any rate, it just seems to me that you're making some very strong arguments here, which we'll consider. It would have been nice to consider them earlier with the jurisdiction part of your brief, which we require. Judge Wallace, you are — I can't — I can't quarrel with you on that at all. I flipped to the front of my brief, and I realize that's not in the front. It's actually in pages 25, 26, and — through 30, I believe, of our brief, and you're absolutely right, and that was my mistake for not addressing that in a separate jurisdictional section. Counsel, do you want to — I know we've taken up your time and questions on jurisdiction. I assume you're satisfied with your submissions on the fees issue. Well, the only issue I would — just let me make a couple of points in response to the claims that were asserted here at oral argument. The district — the assertion that nothing went on in this case and that they were just these simple motions, this was a case of we were stalled and thwarted at every turn on this case by promises, by failures to appear. The claim that you've heard today that he was in the hospital, which is why he didn't appear, is just — I'm sorry. It's just the record shows another one. If you just look at 420 in the record, it's a letter from counsel simply saying, you said his deposition. We're not showing up. He has — you have to come to Los Angeles to take his deposition. There's no assertion here that he was in the hospital. What happened is later he was in the hospital after the district court had ordered his appearance at that deposition. And the deposition transcript, the entire thing is in the record because it's just absolutely outrageous what was going on during that deposition. But we've noted he walked out. Well, there was more than walking out, Judge Thomas. We were taking people out into the hall, changing testimony, walking back in, and asking — starting to ask the witness questions. Now, you didn't say this, did you? Or you didn't mean this, did you? I've read the transcript. All right. Thank you. Yeah. Thank you. Counsel, you've got a minute for rebuttal if you want to take it. Yes. Either — I guess my only point on the jurisdictional issue was possibly it should have maybe been remanded back. The First Amendment complaint says that they attempted to undertake to take notes which were partially paid off in an attempt to have them paid again. There was no matters raised, of course, on summary judgment. But, of course, I didn't realize that myself. The entire focus was on the notes, was on what was due, me trying to get psychiatric But in all fairness, I mean, you were just trying to defend against the collection by asserting these defenses, weren't you? Well, in all fairness, I think what had happened was, when you say in all fairness You were just trying to defend against the collection by the assertion of these, whether you categorize them as claims or affirmative defense. As claims, it was improper conduct that they would take all — it's not on the record here. Yes, often people will not assert claims of themselves unless they felt they were wronged on other claims. I mean, if you want to say, had he not had those notes or had something else happened or had things been paid off, we wouldn't have brought an action of those nature, of course not. But they still were valid claims that one would bring in that circumstance. I mean — Okay. I mean, I don't — it's hard for me to say, you know, of course. The other thing I wanted to just say, again, on the sanctions issue was that the — well, if the Court has read everything, read the transcript, read the briefs, and there's no further questions, then I have nothing else to add. Thank you, counsel. Okay. The case just heard will be submitted.
judges: Wallace, Thomas, Bybee